IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATHAN LITTAUER HOSPITAL<br>99 East State Street<br>Gloversville, NY 12078<br><br>      Plaintiff,<br><br>      vs.<br><br>XAVIER BECERRA, as SECRETARY OF<br>THE UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES<br>200 Independence Avenue, S.W.<br>Washington, D.C.  20201<br><br>      Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff Nathan Littauer Hospital (the "Hospital") brings this action against Defendant Xavier Becerra, in his official capacity as Secretary (the "Secretary") of the United States Department of Health and Human Services ("HHS"), and states as follows:

1.  Plaintiff Hospital provides essential acute care hospital services in an economically challenged region of upstate New York.  At all relevant times, the Hospital has been designated by the Medicare program as a "Medicare Dependent Hospital" ("MDH").

2.  During its fiscal year that ended December 31, 2014 ("FY 2014"), the Hospital experienced a substantial decrease in its inpatient cases due to circumstances beyond its control, which by law required the Secretary to adjust the Hospital's usual Medicare inpatient payments. This adjustment is known as the Medicare Volume Decrease Adjustment ("VDA") payment.

1

3. The Hospital filed a timely application for a VDA payment. The Hospital sought a payment of $1,282,543. The Secretary, acting through the Centers for Medicare and Medicaid Services ("CMS") and its Medicare Administrative Contractor ("MAC") issued a final determination on July 28, 2017, approving a VDA payment to the Hospital in the amount of $237,517 (the "VDA Approval").

4. The Secretary has conceded that the Hospital experienced a decrease in inpatient volume greater than 5% and is, therefore, entitled to a VDA payment for FY 2014. The question to be decided in this appeal is whether the VDA payment set forth in the VDA Approval was correctly calculated.

5. For a period of over 25 years, and up and until 2016, the MACs, acting at the direction of CMS, calculated VDA payments exactly as described in the Medicare Provider Reimbursement Manual ("PRM") and CMS's comments during rulemaking, that is, by subtracting total MS DRG payments (defined and discussed below) from the lesser of (a) the Provider's total Medicare inpatient operating costs (less any adjustment for excess staffing); or (b) the prior year's total Medicare inpatient operating costs updated for inflation (less any adjustment for excess staffing) (the "Historical VDA Approval Methodology"). *See* CMS Pub. 15-1, PRM § 2810.1.D; 71 Fed. Reg. 47,870, 48,056 (Aug. 18, 2006); 73 Fed. Reg. 48433, 48631 (Aug. 19, 2008). Because the Historical VDA Approval Methodology compares similar concepts – total costs and total payments – the Hospital refers to this methodology as an "apples-to-apples" approach.

6. In 2016, the MAC abruptly changed its calculation method (the "Revised VDA Approval Methodology"). The MAC continued to subject the Hospital's total Medicare inpatient costs to the "prior year" and "excess staffing" tests, but added a new step which removed from

2

the Hospital's total inpatient operating costs certain costs now alleged to be "variable." However, the MAC continued to subtract from this amount the Hospital's <u>total</u> MS DRG payments, even though a portion of those payments were intended to reimburse the Hospital for its variable costs.  As a result, the MAC's Revised VDA Approval Methodology improperly compares dissimilar concepts – "fixed" costs and total payments.  For that reason, the Hospital refers to this methodology as an "apples-to-oranges" approach.[1]

7. The Hospital's application for a VDA payment utilized the Historical VDA Approval Methodology, which correctly applied an apples-to-apples comparison of total costs to total payments.  The VDA Approval applied the Revised VDA Approval Methodology, which improperly compared dissimilar concepts – "<u>fixed</u>" costs and <u>total</u> payments.  The application of the Revised VDA Approval Methodology resulted in a significantly smaller VDA payment to the Hospital.

8. Put more simply, for over twenty-five years, the MAC properly applied the applicable law and program instructions one way and reported the resulting determinations to CMS.  Starting in 2016, the MAC began to apply the applicable law and program instructions differently – without any intervening changes to the law or explicit notice from CMS.  The Secretary, by allowing the MAC to adopt this new methodology through adjudication, has violated the Medicare statute and the Administrative Procedures Act.

---

[1] As explained herein, in response to the Revised VDA Approval Methodology, the Board fashioned a third approach ("Board's VDA Methodology").  Recognizing that MS-DRG payments include a component designed to reimburse a hospital for its variable costs, the Board's VDA Methodology reduces MS-DRG payments to exclude the "variable" cost component.  Because this third methodology compares similar concepts - "fixed" costs and "fixed" payments - a continuation of the first analogy would suggest an "oranges-to-oranges" approach.  CMS has adopted this methodology through rulemaking prospectively for fiscal years beginning on or after October 1, 2017.  82 Fed. Reg. 37990, 38179-83 (Aug. 14, 2017).

## PARTIES

9. Plaintiff Nathan Littauer Hospital is a Medicare participating acute care hospital located in Gloversville, New York. At all relevant times, the Hospital was classified as a MDH under Section 42 U.S.C. § 1395ww(d)(5)(G)(iv) of the Social Security Act (the "Act").

10. Defendant Xavier Becerra is the Secretary of HHS and is the federal official responsible for administering the Medicare program under Title XVIII of the Act.

## JURISDICTION AND VENUE

11. This action arises under the Medicare Act (Title XVIII of the Act, 42 U.S.C. §§ 1395 *et seq*. and the Administrative Procedure Act 5 U.S.C. §§ 551 *et seq*. This court has jurisdiction under 28 U.S.C. § 1331 and § 1361, and 42 U.S.C. § 1395oo(f)(1).

12. Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l) and 28 U.S.C. § 1391(c).

## STATUTORY AND REGULATORY BACKGROUND

### A. The Medicare Program and the Appeal Process

13. The Hospital is provider of medical services to beneficiaries of the federally administered Medicare Program as set forth in 42 U.S.C. § 1395 *et seq.* ("Medicare Act").

14. CMS is the agency within HHS charged with administrating the Medicare program.

15. CMS's hospital payment functions are contracted to organizations known as MACs.

16. During each cost reporting period, a MAC determines the payment amounts due to providers under the Medicare statutes, regulations, and interpretive guidelines published by CMS. After the MAC makes a final determination, it sends to the provider a Notice of Program Reimbursement ("NPR").

17. In addition to issuing NPRs, a MAC may make other final determinations, including a VDA payment determination. 42 C.F.R. § 412.92(e)(3); 54 Fed. Reg. 36452, 36480 (Sep. 1, 1989).

18. A hospital may appeal the MAC's final determination to the Provider Reimbursement Review Board ("PRRB" or "Board") pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835. The PRRB is a sub-agency within HHS that serves as an administrative review panel for final determinations made by CMS or the MAC. The members of the PRRB must be "knowledgeable in the field of payment to providers of service" under the Medicare program. *See* 42 U.S.C. § 1395oo(h).

19. The decision of the PRRB is final unless the Secretary reverses, affirms, or modifies the PRRB's decision within 60 days of the provider being notified of the PRRB's decision. *See* 42 U.S.C. § 1395oo(f)(1). A hospital has the right to obtain judicial review of any final decision of the PRRB, or any reversal, affirmance, or modification of the PRRB's decision by the Secretary. *See* 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1877.

### B. Medicare Reimbursement

20. Medicare's hospital insurance program, known as Part A, provides certain benefits covering inpatient hospital, nursing facility, home health and hospice services. Until October 1983, Medicare paid participating hospitals for the "reasonable costs" that they actually incurred in providing inpatient services. To address the increasing costs of inpatient services, Congress amended the Medicare Act in 1983 to create a new payment system for virtually all acute care hospitals known as the inpatient prospective payment system ("IPPS").

21. Under IPPS, hospitals are no longer paid for the reasonable costs incurred in providing inpatient care. Instead, CMS pays a fixed, prospectively determined amount assigned to the applicable diagnosis-related group ("DRG") for each patient discharge, subject to special

rules for certain supplemental payments. Specifically, the fixed DRG-based per discharge rates under IPPS are designed to be payment in full for the hospital's inpatient operating costs, 42 U.S.C. § 1395ww(d)(1)(A), which include "all routine operating costs … and includes the costs of all services for which payment may be made under this subchapter that are provided by the hospital …," 42 U.S.C. § 1395ww(a)(4).

22. The DRG payments compensate a hospital for all such costs – whether fixed or variable – incurred in providing care to an inpatient, regardless of the hospital's actual operating costs. 42 U.S.C. § 1395ww(d)(1). Therefore, hospitals are generally at financial risk that their costs for treating a particular patient may exceed the IPPS rates.

23. Medicare's IPPS assumes that fixed DRG payments based on cases of average complexity and typical inpatient volume will on average adequately compensate efficiently run hospitals.

    **C.** **The VDA Methodology and Payment**

24. Recognizing these assumptions may unfairly burden MDHs, which are – by definition – dependent upon Medicare reimbursements, Congress mandated special payment exceptions and adjustments for those hospitals. *See* 42 U.S.C. § 1395ww(d)(5)(G).

25. For example, Medicare pays a MDH's inpatient operating costs at the amount determined under paragraph (1)(A)(iii) [the DRG based payments] plus 75% of the amount by which the Hospital's target amount exceeds its DRG payments. *See* 42 U.S.C. § 1395ww(d)(5)(G).

26. Another example is the VDA payment. Pursuant to the Act, certain hospitals that experience significant, uncontrollable decreases in inpatient volume, are entitled to an additional payment adjustment known as the VDA payment. *See* 42 U.S.C. § 1395ww(d)(5)(G)(iii).

27. The VDA statute provides:

> In the case of a sole community hospital that experiences, in a cost reporting period compared to the previous cost reporting period, a decrease of more than 5 percent in its total number of inpatient cases due to circumstances beyond its control, **the Secretary shall provide for such adjustment** to the payment amounts under this subsection. . . as may be necessary **to fully compensate the hospital for the fixed costs it incurs in the period in providing inpatient hospital services, including the reasonable cost of maintaining necessary core staff and services**.

42 U.S.C. § 1395ww(d)(5)(D)(ii) (emphasis added).

28. The Secretary's implementing regulations provide that, in order to qualify for the VDA payment, a hospital must:

> (i) Submit to the intermediary documentation demonstrating the size of the decrease in discharges, and the resulting effect on per discharge costs; and
>
> (ii) Show that the decrease is due to circumstances beyond the hospital's control.

42 C.F.R. § 412.92(e)(2).

29. Once a hospital demonstrates that it qualifies for a VDA payment, the MAC calculates the amount of the payment. The regulations in effect when the MAC issued the VDA Approval read as follows:

> (3) The [MAC] determines a lump sum adjustment amount not to exceed the difference between the hospital's Medicare inpatient operating costs and the hospital's total DRG revenue for inpatient operating costs based on DRG-adjusted prospective payment rates for inpatient operating costs . . . .
>
> (i) In determining the adjustment amount, the [contractor] considers --
>
> (A) The individual hospital's needs and circumstances, including the reasonable cost of maintaining necessary core staff and services in view of minimum staffing requirements imposed by State agencies;

7

     (B) The hospital's fixed (and semi-fixed) costs, other than those costs paid on a reasonable cost basis under part 413 of this chapter; and

     (C) The length of time the hospital has experienced a decrease in utilization.

42 C.F.R. § 412.92(e)(3).

  30. During several separate notice-and-comment rulemaking processes, CMS specifically interpreted and explained the payment calculation as follows: "The adjustment amount [VDA] is determined by subtracting the second year's DRG payment from the lesser of: (a) the second year's costs minus any adjustment for excess staff; or (b) the previous year's costs multiplied by the appropriate IPPS update factor minus any adjustment for excess staff.  <u>The [hospital] receives the difference in a lump-sum payment</u>.  71 Fed. Reg. 47,870, 48,056 (Aug. 18, 2006); 73 Fed. Reg. 48433, 48631 (Aug. 19, 2008) (emphasis added).

  31. The Secretary has provided an additional interpretation of the VDA statute and related regulation in the PRM.  The PRM provides "guidelines and policies to implement Medicare regulations."  PRM Forward.  The PRM in effect when the MAC issued the VDA Approval contained the following example:

> EXAMPLE A: Hospital C has justified an adjustment to its DRG payment for FYE September 30, 1987.  The adjustment is calculated as follows:
>
> Hospital C
>
> PPS Payment Adjustment
>
> Fiscal Year Ended 09/30/87
>
> | | | |
> |---|---|---:|
> | FY 1986 Program Operating Cost | | $2,900,000 |
> | PPS Update Factor | x | 1.0115 |
> | FY 1987 Maximum Allowable Cost | | $2,933,350 |
> | | | |
> | FY 1987 Program Inpatient Operating Cost | | $2,800,000 |
> | FY 1987 DRG Payment | – | $2,500,000 |

        FY 1987 Payment Adjustment        $ 300,000

PRM § 2910.1.D.

32. The PRM identifies the sources for "Program Operating Cost" as Worksheet D-1, Part II of the Medicare cost report and "DRG Payment" as Worksheet E, Part A of the Medicare cost report, respectively.

33. With respect to this example, the PRM provides that "Since Hospital C's FY 1987 Program Inpatient Operating Cost was less than that of FY 1986 increased by the PPS update factor, its adjustment is the <u>entire difference between FY 1987 Program Inpatient Operating Cost and FY 1987 DRG payments</u>." *Id.* (emphasis added).

34. Again, the exact approach identified in this example has been endorsed by the Secretary in the Federal Register. 71 Fed. Reg. 47,870, 48,056 (Aug. 18, 2006); 73 Fed. Reg. 48433, 48631 (Aug. 19, 2008).

35. In short, the PRM and guidance from the Secretary instructs that the VDA payment be calculated by subtracting <u>total DRG payments</u> from <u>total inpatient operating costs</u> (adjusted for the PPS update factor and excess staffing). This is the Historical VDA Approval Methodology used by the MAC.

36. The MAC applied Historical VDA Approval Methodology when issuing the Original VDA Approval at issue in this appeal.

37. In 2016, the MAC reopened the Original VDA Approval and recalculated the amount of the Hospital's VDA payment. The recalculation adjusted total inpatient operating costs but did not adjust the total DRG payments (which are subtracted from the inpatient operating costs to determine the VDA payment). This is the Revised VDA Approval Methodology.

38.     In a series of prior cases, including the instant case below, the PRRB concluded that the Revised VDA Approval Methodology fails to account for the important fact that IPPS payments include reimbursement for both fixed and variable costs. The PRRB has concluded that accounting for that fact is necessary "so there is an 'apples-to-apples' comparison" of the costs and payments required by the statute. *See* **PRRB Decision, attached as Exhibit 1, at 8**.

39.     The Secretary has recognized the PRRB's concerns with the Revised VDA Methodology:

> [W]e understand why hospitals might take the view that CMS should make an effort, in some way, to ascertain whether a portion of MS-DRG payments can be allocated or attributed to fixed costs in order to fulfill the statutory mandate to "fully compensate" a qualifying SCH for its fixed costs. [T]he main issue raised by the PRRB and individual hospitals is that, under the current calculation methodology, if the hospital's total MS-DRG revenue for treating Medicare beneficiaries for which it incurs inpatient operating costs (consisting of fixed, semifixed, and variable costs) exceeds the hospital's fixed costs, the calculation by the MACs results in no volume decrease adjustment for the hospital. In some recent decisions, the PRRB has indicated that it believes it would be more appropriate for the MACs to adjust the hospital's total MS-DRG revenue from Medicare by looking at the ratio of a hospital's fixed costs to its total costs (as determined by the MAC) and applying that ratio as a proxy for the share of the hospital's MS-DRG payments that it assumes are attributable (or allocable) to fixed costs, and then comparing that estimate of the fixed portion of MS-DRG payments to the hospital's fixed costs. In this way, the calculation would compare estimated Medicare revenue for fixed costs to the hospital's fixed costs when determining the volume decrease adjustment.

82 Fed. Reg. 37,990, 38,180 (Aug. 14, 2017).

40.     In the 2018 IPPS final rule, the Secretary adopted the PRRB's position, but only for cost reporting periods beginning after October 1, 2017. *See* 82 Fed. Reg. at 38,511. The Secretary's "new" methodology – which is the Board's VDA Methodology – calculates the VDA payment by taking fixed inpatient operating costs and subtracting estimated Medicare payments

10

attributable to the fixed costs a hospital incurs in treating inpatient Medicare beneficiaries. The result is the amount of an eligible hospital's VDA payment.

41. The Secretary refuses to apply the Board VDA Methodology to cost reporting periods beginning <u>before</u> October 1, 2017.

## FACTUAL AND PROCEDURAL BACKGROUND

42. In the Hospital's 2014 fiscal year, the Hospital, through no fault of its own, experienced a greater than five percent decline in inpatient discharges from the prior cost reporting period. By letter dated June 30, 2016, the Hospital submitted a timely request to the MAC for a VDA payment of $1,282,543.

43. The Hospital calculated its requested VDA payment using the Historical VDA Approval Methodology.

44. By letter dated July 28, 2017, the MAC issued the VDA Approval. The workpapers attached to the MAC's VDA Approval demonstrate that the MAC applied the Revised VDA Approval Methodology.

45. In applying the Revised Approval Methodology, the MAC reduced the Hospital's inpatient operating costs by 12.6% to reflect the portion of the Hospital's total inpatient operating costs allegedly attributable to variable costs. From that adjusted inpatient operating costs number, the MAC subtracted the Hospital's total DRG payments.

46. Based on this calculation, the MAC's VDA Approval awarded a lump sum payment of $237,517.

47. The Hospital filed a timely appeal of the VDA Approval with the PRRB.

48. Before the PRRB, the parties stipulated to the following facts, among others:

    a. By a letter dated June 30, 2016, the Provider timely filed a request for a VDA payment ("VDA Request") with the MAC.

11

   b. By a letter dated December 29, 2016, the MAC requested that the Provider submit

   c. additional information related to the VDA Request.

   d. The Provider timely submitted the additional information requested by the MAC.

   e. The MAC reviewed the Provider's VDA Request and the additional information requested. Based on this review, the MAC determined that the Provider had experienced a decrease of more than five percent in its total number of inpatient cases due to circumstances beyond its control and was therefore entitled to a VDA payment.

   f. By a letter dated July 28, 2017, the MAC issued a final determination approving

   g. the Provider's VDA Request ("VDA Approval") in the amount of $237,517.

   h. The VDA Approval awarded $1,045,026 less than the amount requested by the Provider.

  49. On March 19, 2024, after a hearing on the record, the PRRB issued its decision.

The PRRB found that the MAC had improperly calculated the VDA Approval payment, finding:

> Critical to the proper application of the statute, regulation and PRM provisions related to the VDA, are the unequivocal facts that: (1) the Medicare patients to which a provider furnished *actual* services in the current year are not part of the volume decrease, and (2) the DRG payments made to the hospital for services furnished to Medicare patients in the current year are payments for *both* the fixed and variable costs of the *actual* services furnished to those patients. Therefore, in order to fully compensate a hospital for its fixed costs in the current year, the hospital must receive a payment for the variable costs related to its *actual* Medicare patient load in the current year, as well as its full fixed costs in that year.

**PRRB Decision (Ex. 1), at 13.**

  50. The PRRB determined that the MAC should have applied the Board VDA Methodology, pursuant to which the Hospital would receive a VDA payment of $1,254,644. Because the Hospital had already received a VDA payment of $237,517, the PRRB held that the Hospital was entitled to receive an additional amount equal to $1,017,127.

12

51. On March 26, 2024, the CMS Administrator notified the Hospital that it would review the PRRB's decision. The CMS Administrator issued its decision on May 17, 2024. The Administrator reversed the decision of the PRRB and upheld the MAC's VDA Approval. *See* **Administrator Decision, attached here as Exhibit 2.**

## COUNT I
### (Violation of the Medicare Statute and Administrative Procedure Act)

52. The Hospital repeats the allegations in paragraphs 1 through 51 as if set forth fully herein.

53. The Medicare statute provides for judicial review of a final agency decision in cases like the one before this court pursuant to the provisions of the Administrative Procedure Act ("APA"). 42 U.S.C. § 1395oo(f)(1).

54. The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706(2).

<u>Application of the VDA Statute</u>

55. The purpose of the VDA adjustment is to "fully compensate" the hospital for the fixed costs it incurs in the period in providing inpatient hospital services. The Revised VDA Approval Methodology used in this case by the MAC and the Secretary does not satisfy this statutory requirement.

56. The Medicare Act makes clear that DRG payments are intended to be compensation for all inpatient operating costs, whether fixed and variable. 42 U.S.C. § 1395ww(a)(4). The Revised VDA Approval Methodology adopted by the Secretary in this

13

appeal disregards this undisputed fact, and willfully pretends that the Hospital's total DRG payments were intended to reimburse fixed costs only.

57. Because the Revised VDA Approval Methodology has mistakenly treated the Hospital's <u>total</u> DRG payments as reimbursement for <u>fixed</u> costs only, the Secretary has mistakenly used the intended variable cost reimbursement to satisfy payment of the Hospital's otherwise uncompensated fixed costs.

58. This is a direct result of the Secretary's application of an apples-to-oranges comparison which arbitrarily and capriciously compares <u>total</u> DRG payments to the Hospital's <u>fixed</u> costs.

59. The Revised VDA Approval Methodology and its application of the apples-to-oranges comparison was based on an unlawful and unreasonable interpretation of the clear statutory mandate.  It was also inconsistent with the Secretary's prior, clearly stated interpretation of the applicable regulations.  71 Fed. Reg. 47,870, 48,056 (Aug. 18, 2006); 73 Fed. Reg. 48433, 48631 (Aug. 19, 2008); PRM § 2910.1.D.

<u>CMS's Adoption of the Revised VDA Approval Methodology</u>

60. The Medicare Act provides that "[n]o rule, or other statement of policy ... that establishes or changes a substantive legal standard governing ... the payment for services ... shall take effect unless it is promulgated by the Secretary by regulation." 42 U.S.C. § 1395hh(a)(2).

61. The method that HHS used to calculate the Hospital's VDA Approval is a "rule" that changed a substantive legal standard governing the payment for services within the meaning of the Administrative Procedures Act ("APA"), 5 U.S.C. § 551(3), and therefore required notice and comment prior to adoption.

62. The Historical VDA Approval Methodology and the Revised VDA Approval Methodology represent different substantive legal standards for calculating the VDA payment, as evidenced by the different payment amounts calculated by the respective methodologies in this very appeal.

63. The Secretary has previously published through the notice-and-comment rulemaking a clearly stated interpretation of the applicable regulations which required application of the Historical VDA Approval Methodology.  71 Fed. Reg. 47,870, 48,056 (Aug. 18, 2006); 73 Fed. Reg. 48433, 48631 (Aug. 19, 2008); PRM § 2910.1.D.

64. The Secretary failed to follow notice-and-comment rulemaking before adopting and applying the Revised VDA Methodology in the appeal, in violation of the APA.

## **PRAYER FOR RELIEF**

WHEREFORE, Nathan Littauer Hospital requests that this Court:

1. Rule that the Secretary's decision to modify the PRRB's decision was (A) in excess of statutory authority or limitation or short of statutory right, (B) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (C) without observance of procedure required by law, and/or (D) unsupported by substantial evidence under the APA, 5 U.S.C. §§ 553 and 706 and therefore reinstate the PRRB's decision;

2. Enter an order vacating the Secretary's decision and remanding the appeal to the agency with instructions to recalculate and pay a VDA payment in accordance with the Court's ruling under (1) or (2) above, together with interest due on the payment under 42 U.S.C. § 1395oo(f)(2), and requiring the Secretary to pay the Hospital's legal fees and costs of suit; and

3. Provide such other and further relief as the court deems just and proper.

Dated: July 15, 2024

/s/ Rachel M. Wertheimer
William H. Stiles
Rachel M. Wertheimer
VERRILL DANA LLP
One Portland Square
Portland, ME 04101-4054
Telephone:  (207) 253-4620
Facsimile: (207) 253-4621
rwertheimer@verrill-law.com
wstiles@verrill-law.com
*Pro Hac Vice Forthcoming*

Counsel for Plaintiff Nathan Littauer Hospital

16